UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

PAUL MITURA

Plaintiff-Appellant

v.

New York State,

Defendants-Appellees

---

On Appeal from the United States District Court
for the Northern District of New York

---

Brief of Appellant Paul Mitura

Paul Mitura, Pro Se
5139 Old Barn Road, Clay, New York 13041
(315) 5420648

1

# TABLE OF CONTENTS

Table of Contents……………………………………………………2

Table of Authorities……………………………………………….3

Statutes……………………………………………………………4

Statement of Subject Matter and Appellate Jurisdiction………………………5

Statement of the Issues Presented for Review…………………………………6

Statement of the Case……………………………………………….7

Statement of the Facts………………………………………………8-9

Summary of the Argument…………………………………………..10

Argument………………………………………………………11-25

Conclusion……………………………………………………….26

Certificate of Compliance………………………………………….28

Certificate of Service…………………………………………………

# Table of Authorities

McCarty v. McCarty, 453 U.S. 210 (1981)....................................................8

Tozer v. Tozer, 2017 COA 151, 21.........................................................12

Alvarado v. Alvarado, NY Slip Op 50130(U) (2015)....................................12

Newman v. Newman, 248 AD2d 990 (4th Dept. 1998).................................12

Howell v. Howell, 581 U.S. 137 S. Ct. 1400 (2017)....................................13

Majauskas v. Majauskas, 61 N.Y. 2d 481 (1984)......................................13

Reyes v. Reyes, No. 11-CV-2536, 2011 WL 3625562, (E.D.N.Y. Aug 16, 2011)......14

Jackson v. Sollie, No. 13-C-14-101240....................................................15

Miceli v. Miceli, 78 AD3d 1023 (2d Dept. 2010).......................................16

Forchion v. Intensive Supervision Parole, et.al., 240 F.Supp.2d 302 (2003)...........17

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).............18

Lance v. Dennis, 546 U.S. 459 (2006)...................................................18

VanderKodde v. Mary Jane M. Elliott, 314 F. Supp. 3d 836 (W.D. Mich. 2018)......18

Ex parte Young, 209 U.S. 123 (1908).....................................................20

Fitzpatrick v. Bitzer, 427 U.S. 445......................................................21

Central Virginia Community College v. Katz, 546 U.S. 356 (2006)....................21

Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613 (2002)..21

## STATUTES

10 U.S.C. § 1408...........................................................................5

38 U.S.C. § 1131..........................................................................12

38 U.S.C. § 1114, 1134................................................................12

42 U.S.C. § 407............................................................................5

DRL § 236...................................................................................16

28 U.S.C. § 2283.........................................................................16

28 U.S.C. § 2254.........................................................................17

28 U.S.C. § 1257.........................................................................18

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The federal courts have jurisdiction of this action under 28 U.S.C. § 1331, 10 U.S.C. § 1408, and

42 U.S.C. § 407. Venue was proper in the United States District Court for the Northern District

of New York (the "District Court") because the judgement and incident occurred in the district,

with at least one act proscribed by the corresponding id. I commenced the action against the

Defendant on November 30, 2022, and this Court possesses jurisdiction of this appeal under 28

U.S.C. § 1291 (2000). This appeal is from a final order or a final judgement from United States

District Court Northern District of New York in the form of a Memorandum-Decision and Order

dated August 24, 2023.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Can the Onondaga County Supreme Court of the State of New York divide Veteran's Administration Disability Compensation, Social Security Disability Insurance Benefits, Inheritance, and Estate Funds as marital property in a divorce. Has the United States District Court Northern District of New York based its decision on the assumption that the monies are from military retirement and not the forementioned sources. Does the Uniformed Services Former Spouses' Protection Act (USFSPA), the Social Security Act 42 U.S.C. § 407, and similar laws protect monies from these sources from division in divorce. Can the Court rule opposite of State Courts of Appeal and other United States Courts of Appeal. Can the Court rule against the Supreme Court of the United States which has already ruled in multiple cases, and thus set a precedent.

## STATEMENT OF THE CASE

I, Plaintiff-Appellant, received a divorce judgement and quickly followed Court procedures by filing multiple motions seeking to Void, Nullify, Dismiss, Set Aside, Reargue and ask Recusal of the granting judge. All motions were dismissed, and I filed a complaint against the granting judge with the New York State Commission for Judicial review, however, no action was taken. I filed an appeal with the New York State Court of Appeals Fourth Judicial Department seeking approximately $70,000, which was dismissed. I filed a complaint with the United States District Court Northern District of New York, and the case was dismissed by the Court without leave to replead. I filed an appeal with the United States Court of Appeals for the Second District. My brief is due on March 15, 2024.

## STATEMENT OF THE FACTS

P.3   Plaintiff clarifies that he is seeking approximately $56,000, which he alleges is the

sum unjustly awarded to his former spouse in the divorce. This is likely an administrative error

of the Court, as I am claiming approximately $70,000. which has been indicated in previous

documentation.

*McCarty v. McCarty,* 453 U. S. 210 (1981) led to the Uniformed Services Former

Spouses' Protection Act (or USFSPA) which is a U.S. federal law enacted on September 8, 1982

to address issues that arise when military service members divorce. This is the legislation which

is now law and central to this case. Justice Marshall described the reasoning for the Act. "We

concluded that treating such pay as community property would do clear damage to important

military personnel objectives. *Id.* at 453 U. S. 232-235.

There exists confusion as to the types of money that former military personnel receive

once retired. I was severely wounded in combat and received Veteran's Administration Disability,

which is often referred to as Veteran's Administration Compensation. I do not yet receive my

military pension, and my former spouse will receive a percentage of it once I begin to receive it

based on the divorce judgement.

I repeatedly advised all previous Courts that the monies of issue are not from military

retirement but are instead separate property which cannot be divided in divorce. The United

States District Court Northern District of New York, presumably, based its decision on the belief

that the monies are from military retirement. This is evident by the Memorandum-Decision and

Order dated August 8, 2023. The document repeatedly includes writing which supports the

Court's claim that the lower court could divide military retirement pay. The Court never

acknowledged the fact that I repeatedly wrote what the true source of the monies is.

8

The Court never addressed the division of Social Security Disability Insurance, which also cannot be divided in divorce.

A smaller percentage of the monies that were awarded were inheritance from my father who passed shortly before the divorce. As the only child in the area, I became the manager of his properties and the estate funds used to administrate the properties also could not be divided. These monies have never been discussed, or, apparently, considered by the courts, even though I repeatedly wrote that they were included in the award. Although included, I present that they comprise a small percentage of the funds because the funds were primarily from Veteran's Administration Disability and Social Security Disability Insurance.

## SUMMARY OF THE ARGUMENT

The Court of instance (Onondaga County Supreme Court) violated federal law by awarding

multiple forms of monies to my former spouse in a divorce. Federal law clearly states that the

monies cannot be divided, and it appears as if the Court believed the monies to be a different

type of monies than they were. The monies could not have been divided under any circumstance,

and few courts have attempted it. Extensive research has determined that few courts have

attempted to award these funds and their decisions were overturned, including a case that was

reversed and remanded by the Supreme Court of the United States, and another in which it held

on appeal. If the Court allows this dismissal to stand, it would likely be the only time it has ever

occurred.

# ARGUMENT

The judge of instance, and in this case, the State of New York, violated federal law by awarding multiple forms of federally protected separate property as marital property in a vicious and inequitable divorce. Mistakes are made in complex cases; however, this cannot be attributed to an excusable judgmental error.

Throughout a separation that lasted more than one year, I repeatedly told my spouse, two of her attorney's, a matrimonial referee, and the Court that all my wages and savings were comprised of monies from multiple sources that could not be divided in a dissolution of marriage action. The monies were used throughout the separation even though New York State Domestic Relations Law considers the date of separation to be the point at which wages become separate.

Once awarded to my former spouse after divorce, I followed procedures by submitting multiple motions which included extensive information as to why the monies could not be divided, but the motions were rejected. I followed the appeals process by filing an extensive appeal with the New York State Court of Appeals, which was dismissed.

After extensive research, I have been unable to find much precedence in that few cases are accessible in which a judge has awarded VA compensation and, or Social Security Disability Insurance (SSDI) in a divorce. Presumably, courts do not divide such monies because federal law clearly states that they cannot. I could only find a few cases with the help of several legal professionals at multiple military legal assistance offices, the use of two large university law school libraries, and extensive computer research.

With two long and protracted military conflicts over the past few decades, a high percentage of veterans receive VA disability benefits. Approximately half of marriages end in

divorce, most of which result in a complex division of assets. This has likely resulted in several million situations that were like mine, but very few have made it to the appeal level and there exists no record of the funds being divided after appeal. I have been unable to find an example of an appeals court not reversing a decision to award such monies in a divorce.

*Alvarado v. Alvarado* is a 2015 case in New York that mirrors mine in which the VA disability and SSDI were considered for division in divorce. The Court found that Husband's benefits were separate property and not subject to the principles of equitable distribution or maintenance.

*Newman v. Newman* is a 1998 New York case which is like mine in that it occurred in a neighboring county and the judge awarded VA disability as marital property in a divorce. The Appellate ruled that VA disability benefits of the plaintiff are separate and distinct from his Air Force pension, and his VA disability benefits are not subject to equitable distribution *(see, Mansell v. Mansell*, 490 U.S. 581, 584, n. 2; 10 U.S.C. § 1408). Furthermore, because VA disability benefits are based solely upon a "disability resulting from personal injury suffered or disease contracted in the line of duty" ( 38 U.S.C. § 1131) and do not represent deferred compensation *(see,* 38 U.S.C. § 1114, 1134), such benefits are separate property *(see, Dolan v. Dolan*, 78 N.Y.2d 463).

In the MARRIAGE OF Linda TOZER, n/k/a Linda Finch, Appellant, 410 P.3d 835 (Colo.App. Div. 4 2017) the Colorado Court of Appeals upheld a prior decision because federal law precludes state courts from dividing military disability benefits as marital property, "we conclude the district court did not error in denying wife equitable relief."

In another case- 18CA1177 Marriage of Copeland 10-03-2019, the court found, under Howell v. Howell, 581 U.S., 137 S. Ct. 1400 (2017) and Tozer v. Tozer, 2017 COA 151, 21, that it could not consider husband's military disability benefits in the marital property division.

Mansell v. Mansell, 490 U.S. 581 (1989) is a case in which the Supreme Court of the United States held on appeal from California that the Act does not grant state courts the power to treat as property divisible upon divorce.

Howell v. Howell is a U.S. Supreme Court case that established clear guidance for military divorce settlements under the Uniformed Services Former Spouses' Protection Act (USFSPA). The case was decided unanimously and reversed and remanded by the court. The highest court in the land has already ruled unanimously that the funds cannot be divided in a divorce. If the Supreme Court of the United States ruled that such monies cannot be divided, the Onondaga Country Supreme Court cannot divide them.

P.2   "Judge Mulroy awarded Plaintiff's former spouse "her marital share of Plaintiff's military pension pursuant to *Majauskas v. Majauskas*, 61 N.Y. 2d 481 (1984)." The Court additionally references Section 1408 on the same page "payment of retired or retainer (military) pay in compliance with court orders, although Plaintiff did not point to any specific provisions within the statute. 10 U.S.C. 1408; *see* Dkt. No.1-2." I present that I do not have to point to provisions in the statute because the statute in its entirety is based on the issue. This was not my military pension; it was VA compensation which is different and cannot be divided. I have told this to multiple courts several times, including Judge Mulroy and the Court of instance. It was also a major reason for my appeal with the New York State Court of Appeals. I also included it in my complaint in the United States District Court Northern District of New York, but on page 6 of the Memorandum-Decision and Order, 10 U.S.C. 1408 is referenced, "which gives states the

right to treat disposable military retired pay as either separate or marital property." This should not be included and is irrelevant and misleading as to my case because my VA compensation is not military retired pay. My military retirement pay is separate, and my former spouse has been awarded a percentage of it. The Northern District's decision was based, at least partially, on false information which was presented as a reason for the dismissal. The information with which previous courts have made decisions should be correct and not incorrect, which is important to my appeal. This is a major error relating to the facts of the case. I never claimed that my military pension was an issue. Presenting such false information in a court should have, and likely would have, consequences if I, as a Pro Se Appellant, presented it.

P.6   *Reyes v. Reyes* is a case in which a U.S. Coast Guard pension was questioned. It is like *Majauskas v. Majauskas*, 61 N.Y. 2d 481 (1984)" in that it is irrelevant because it was not my military pension in question. Once again, it was Veteran's Administration Disability Compensation which is different than a pension and cannot be divided in a divorce in any state, including New York State. Federal law is very clear that VA disability benefits are not a marital asset. That legal guidance is found in the Uniformed Services Former Spouses' Protection Act (USFSPA), which exempts VA disability benefits from being considered marital property. A judge cannot award VA disability benefits as marital property in a divorce.

P.6   The Court again cites *Reyes v. Reyes* (finding the plaintiff cannot invoke subject-matter jurisdiction of the federal court pursuant to the USFSPA because the statute does not create a federal cause of action). Rather, 10 U.S.C. 1408 gives states the authority to treat disposable military retired pay as either separate or marital property in accordance with the law of each state. Once again, my VA disability is not military retirement pay. My military retirement pay has been divided by the divorce.

The doctrine of precedent is based on the principle of stare decisis, which requires lower courts to take account of and follow the decisions made by the higher courts where the material facts are the same. In this case, the material facts are the same. Lower courts are bound by precedent, which means they must follow the decisions made by higher courts, The Supreme Court's decisions set binding precedents for all other courts. Lower courts must follow these precedents, and no lower court can ever supersede a Supreme Court decision. Remember, once the Supreme Court has made a ruling, citizen action becomes irrelevant, and the matter shifts from legal determination of fact to enforcement of established fact. So, while lower courts may interpret and apply the law differently, they ultimately operate within the framework set by the Supreme Court.

A high percentage of the divided funds were from Social Security Disability Insurance, which is also separate property and cannot be divided as marital property in a dissolution of marriage action. Social Security benefits cannot be reached for purposes of a property division, either by agreement or court order. The Social Security Act 42 U.S.C. § 407 (a) federal law renders Social Security exempt from this property division; Social Security benefits will be considered the separate property of the individual. A state court awarding SSDI in a divorce is a violation of federal law, and federal law is the law of the land, and it supersedes all other laws in all circumstances.

Like VA disability, I have had a difficult time finding examples of SSDI being awarded in a divorce. I did, however, find a case in which it was attempted. In the Maryland case of *Jackson v. Sollie* the Appellate Court reasoned that the trial court correctly followed Family Law Sections 8-202 and 8-203. The Howard County Circuit Court properly classified the parties' anticipated Social Security benefits as non-marital property and that under federal law, the trial court was

prevented from dividing those benefits directly or by way of an indirect offset when determining the equitable distribution of marital property.

A divorce case in Nassau County, New York, involved such and the Court ruled that Social Security Disability Benefits are separate property and are not subject to equitable distribution. DRL § 236 (B) (1) (d) (2); *Miceli v. Miceli*, 78 AD3d 1023 (2d Dept. 2010). The Supreme Court errored in awarding the plaintiff 50% of the defendant's "North Fork savings account," as that account comprises the defendant's Workers' Compensation and Social Security disability benefits, which are her separate property and are not subject to equitable distribution. Similarly, Justice DiDomenico ruled in the forementioned Alvarado v. Alvarado that Social Security Disability Benefits are separate property and are not subject to equitable distribution.

Title 28, United States Code, Section 2283 reads: Qualified immunity allows government officials to avoid liability under Section 1983 if their actions did not violate a clearly established right. In this case, the action violated a clearly established right which was for my funds not to be divided in a divorce because federal law prohibited them from division. This is a right that should have been reasonably known by a competent government official in his/her duties and as such the Court should have been aware that its conduct was unlawful. This judgement was made by a senior judge with extensive experience even though I notified the Court several times that division would be a violation of federal law. The law was well established by that point. The conduct clearly supports a Section 1983 claim.

The cause of action relates to torts law in that significant monies were awarded to my former spouse because of a willful violation of federal law by a state court which resulted in a loss of monies by me (Plaintiff-Appellant). This action is compensatory in that money was taken

from me and includes a Precedent Cause of Action in that the decision was counter to several prior legal decisions, including multiple cases from the highest court in the land.

After much legal proceedings, it is possible that the Court of instance (Onondaga County Supreme) based the decision on legislation that was believed to be correct and legal, however, it was not. That burden belongs to the Court, and not the Plaintiff.

I once again present the Supremacy Clause. The law that applies to situations where state and federal laws disagree is called the supremacy clause, which is part of article VI of the Constitution. The supremacy clause contains what's known as the doctrine of preemption, which says that the federal government wins in the case of conflicting legislation. Federal law preempts the authority of state courts to consider veterans' disability benefits as property divisible upon termination of a marriage.

P.7    The Court presents that my claim is prohibited by the Rooker-Feldman doctrine. The doctrine dates to 1923 and is often used by defendants in desperation as it is often considered antiquated in the legal profession. Of course, much has changed in more than a century since its inception, and as such, problems have occurred with it. An example of legislation that has been interpreted to be an exception to this doctrine is 28 U.S.C. § 2254, which authorizes federal courts to grant a writ of *habeas corpus*, even after a state court has denied it. Another explicit legislative exception to this doctrine was the "Palm Sunday Compromise," a statute passed by Congress to permit federal courts to review the decisions of Florida courts in the Terri Schiavo case. The doctrine has been held to apply to any state court decisions that are judicial in nature. For example, a judge's decision not to hire an applicant for a job is not a "judicial" decision. However, in the prisoner rights case of *Forchion v. Intensive Supervision Parole*, et.al., 240 F.Supp.2d 302 (2003) the federal district court Judge

Irenas (Camden, NJ) interceded when it ruled "The Rooker–Feldman doctrine does not apply to this case. The ISP Resentencing Panel has final authority over the Plaintiff and there is no way of him appealing its decisions. Accordingly, this Court does have the authority to review the decisions of the panel." In 2005, the Supreme Court revisited the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). The Court affirmed that the *Rooker–Feldman* doctrine was statutory (based on the certiorari jurisdiction statute, 28 U.S.C. § 1257), and not constitutional, holding that it applies only in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The Supreme Court has continued to narrow the doctrine, as in *Lance v. Dennis*, 546 U.S. 459 (2006), and seems to want to minimize the use of the doctrine. For a mock obituary of the doctrine, see Samuel Bray, *Rooker Feldman (1923–2006)* 9 Green Bag 2d 317. I present that if the doctrine is absolute, why is it not absolute? One of the more recent assaults on the doctrine, by Chief Judge Sutton of the United States Court of Appeals for the Sixth Circuit, calls for something more extreme than past criticisms: an overhaul. In *VanderKodde* v. *Mary Jane M. Elliott*, P.C.,5 a recent Sixth Circuit decision, Judge Sutton argued in his concurrence that the doctrine should be abandoned. While not a new idea, his proposition reinforces the criticisms voiced by lower courts that the doctrine is not only confusing but entirely unworkable. As Judge Sutton wrote, "Rooker-Feldman is back to its old tricks of interfering with efforts to vindicate federal rights and misleading federal courts into thinking they have no jurisdiction over cases Congress empowered them to decide." In short, the lower courts' tango with the doctrine often involves too many missteps. The Rooker-Feldman doctrine is a legal principle that generally bars lower federal courts from hearing appeals of state court judgments. However, there

are exceptions to the Rooker-Feldman doctrine when the state court judgment was procured through fraud, deception, accident, or mistake.

I claim that my case fits in the category of being an exception to the doctrine. It appears as if the issuing Court of this judgement, (Onondaga County Supreme) clearly made a mistake by believing that the monies in question were from my military pension and not VA disability. If this is not true, why did the Court write it multiple times in multiple documents? Similarly, the United States District Court Northern District of New York did the same. It is also possible that the basis of presenting clearly inaccurate information could be deception, however, the responsibility of determining why a judgement was made does not belong to me. Comparatively, I (Plaintiff-Appellant) have been held to rigorous standards in documentation relating to this case such being required to produce documentation of all funds in question. The Court, however, is claiming that the funds in question are from an entirely different source than they are.

The term preclusion is an umbrella for the related series of doctrines that deal with deciding when a court will bar litigation of a claim or issue because that claim or issue has already been decided in a previous action.

The Supreme Court cautioned that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions. Preclusion is an umbrella for the related series of doctrines that deal with deciding when a court will bar litigation of a claim or issue because that claim or issue has already been decided in a previous action. The Rooker-Feldman does not override or supplant the preclusion doctrine. Instead, it coexists with the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

The Rooker-Feldman doctrine is typically invoked by defendants to strip federal district and bankruptcy courts of their subject matter jurisdiction and is typically used and that area of litigation. However, it does not replace or augment the preclusion doctrine, which addresses issues of claim and issue preclusion based on prior litigation. So, while Rooker-Feldman has its limitations, it does not override the broader principles of preclusion. Preclusion can be used by this Court because my case has already been dismissed, and it can also be used by this Court because the Supreme Court of the United States has unanimously ruled in favor of a case like this and held another.

The Eleventh Amendment (Amendment XI) is an amendment to the United States Constitution which was passed by Congress on March 4, 1794, and ratified by the states on February 7, 1795. The Eleventh Amendment restricts the ability of individuals to bring suit against states of which they are not citizens in federal court. This was passed centuries ago, and, although it remains relevant in some cases, it is often dismissed in others. Of course, there were going to be problems with such an amendment which would allow states to violate individual rights without consequences.

There have been several cases that have challenged it, including several from long ago such as *Ex parte Young*, 209 U.S. 123 (1908). There have also been several more recent cases. The Court's ruling in *Fitzpatrick v. Bitzer*, 427 U.S. 445 was a United States Supreme Court decision that determined that the U.S. Congress has the power to abrogate the Eleventh Amendment sovereign immunity of the states. *Torres v. Texas Department of Public Safety, Central Virginia Community College v. Katz, PennEast Pipeline Co. v. New Jersey*) have identified further exceptions to the general sovereign immunity of States when Congress acts pursuant to its Article I powers, which have alternatively been referred to as "waivers in the plan

of the Convention." The Court's ruling in *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) allows

Congress to abrogate state immunity from suit under Section 5 of the Fourteenth Amendment;

this was broadened to include bankruptcy cases by *Central Virginia Community College v.*

*Katz*, 546 U.S. 356 (2006), based on Article I, Section 8, Clause 4 of the Constitution.

In *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002), the

Supreme Court ruled that when a state invokes a federal court's removal jurisdiction,

it waives the Eleventh Amendment in the removed case. Once again, I present the Supreme

Court of the United States, which has also held that federal courts can enjoin state officials from

violating federal law. Justice David Souter, writing for a four-Justice dissent in *Alden*, said the

states surrendered their sovereign immunity when they ratified the Constitution. He read the

amendment's text as reflecting a narrow form of sovereign immunity that limited only the

diversity jurisdiction of the federal courts. He concluded that neither the Eleventh Amendment

nor the Constitution in general insulates the states from being suited by individuals. There have

been examples of cases in which the eleventh amendment held and individuals were not allowed

to, however, The Court, in an opinion by Justice William Rehnquist, distinguished previous cases

in which attempts by individuals to sue the states for money damages (or the equivalent),

including *Edelman v. Jordan*, had failed because the plaintiffs had not identified an *express*

*provision* by Congress that permitted such lawsuits. The Court ruled that Congress has the

power, under the Fourteenth Amendment, to abrogate sovereign immunity of states, as it was

enacted specifically to limit the power of the states with the purpose of enforcing civil rights

guarantees against them.

The problems with the eleventh amendment are obvious and severe. A hypothetical

example is as follows- a law abiding taxpayer of a state has been severely injured by a state

employee who was operating state owned equipment while under the influence of some form of illegal substance. The injured person can no longer work and provide for his or her family. Does the eleventh amendment prevent this person from making a claim against the state? It does not, although defendants will often claim that it does. Although hypothetical, this example provides a snapshot of limitations of the amendment.

P.8   Even assuming Plaintiff is attempting to assert claims against Judge Mulroy, these claims are barred by the doctrine of judicial immunity, the Court cites *Cinotti v. Ableman*, 709 Fed. Appx. 39, 41 2nd Cir. 2017). This is a case in which a Pro Se Plaintiff alleged that a judge discriminated against her in a divorce. It is irrelevant to mine because I do not claim discrimination but do claim that federal laws were violated by a lower court. The very title of this case names the judge as the defendant while I name the State of New York.

Even where state judges and federal judges have absolute immunity, you can use the law to: Ask to have the judge disqualified or recused, submit a trial court or lower circuit court ruling to an appellate court, or submit a court of appeals decision to the state or the U. S. Supreme Court. I am following standard legal procedure by submitting a lower circuit court ruling to an appellate court. Why would appellate courts exist if decisions could not be appealed? In this case, both the Defendant and the District Court claim the Judge Mulroy enjoys judicial immunity, however, I have not attempted to assert a claim against Judge Mulroy.

I have presented several times in the brief that the Court has likely mistaken VA disability for military retirement pay. I cannot possibly speculate on what the judge was thinking, however, the Court's writing indicates that the types of monies have been confused.

The following cases were presented by the United States District Court Northern District of New York in its Memorandum-Decision and Order dated August 24, 2024. I have provided additional information on each in support of my case. There are more in the document, however, I have only included some because including more would be repetitive. I also present that these cases typically include rulings which favor defendants, but none of them relate to the division of the monies in question. Comparatively, I provided the opposite, which included several cases in which the division of similar assets was either ruled against or reversed on appeal.

P.3  *Dutrow v. New York State Gaming Commission* is irrelevant to my case as its major contention is that Dutrow was denied a fair hearing, its major argument is whether Dutrow had a full and fair opportunity to litigate that issue. My case is completely different in that federal law was violated by a state court. The post-divorce division of assets is the issue before this Court.

P.3  *Long Island Pure Water Ltdg v. Cuomo* is a claim against the former governor of New York State relating to environmental actions in the 1940s. The only similarity between this case and mine is that I have a claim against the State of New York. In this case, former Governor Andrew Cuomo is named as the defendant, and I name the State of New York as the defendant. I fail to see any link between this case and mine and there have been many claims against the State of New York.

P.3  *Sinochem Int'l Co., Ltd. V. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) relates to jurisdiction and is also irrelevant to this case. I have already appealed this case with New York's highest court and then next step is logically and legally the United States District

Court because federal law was clearly violated. This is the correct court, and it does have jurisdiction in this case.

P.5 *Bell Atl Corp v. Twombly*, 550 U.S. 544 (2007) is referenced and includes "the pleading's factual allegations must be enough to raise a right of relief above a speculative level." This is also irrelevant because there is no speculation involved in my case, as federal law 10 U.S.C. 1408 clearly states that the funds cannot be divided.

P.6 *Bracey v. Bd. Of Educ.* This case involved a teacher whose employment was terminated from a school in Connecticut, and after reading it multiple times, I cannot find a link to my case.

P.6 The Court presents *Badwell v. Badwell* which is a case in which the sale of funds from a hotel is questioned. This has nothing to do with my case because the basis of it relates to equitable distribution after divorce and not the division of federally protected funds. Funds from a hotel are not and have never been federally protected and titled as separate property.

P.6 There is no federal cause of action for challenging the divorce of a state divorce or state judgements more generally. This applies mainly to someone who is challenging the divorce itself. The reference to *Badwell v. Badwell* on page 6 relates to a case in which the sale of funds from a hotel is questioned. This has nothing to do with my case because the legality of it relates to equitable distribution and not the division of federally protected funds.

P.7   The Court presents *Ross v. City Univ of New York* which is a case in which a plaintiff claimed that architectural barriers at Queens College hindered her ability to access services. This is also irrelevant to my case. There were several layers of administration to address and claim against prior to federal court, including the school, the City University system, the State University of New York system, the borough of Queens, the City of New York, the State of New York, and the New York State Department of Education. Additionally, no financial loss was experienced by the plaintiff, only the inability to access programs. A case against City University of New York involving the access of services is irrelevant to my case.

P.7   *Brokamp* v. *James* is a New York case in which a mental health care provider brought a claim against the New York State Attorney General. The case is completely different and irrelevant to my case.

P.8   The Court cites *Grullon v. City of New Haven*, which is a case in which a Pro Se Plaintiff commenced an action while detained, and it has no relevance to my appeal.

P.8   The Court cites *Ricciuti v. N.Y.C.* Transit Auth. And P.8 concludes with "Here, Plaintiff's complaint is subject to dismiss on jurisdictional grounds, which will not be cured through better pleading. For this reason, any attempt to amend the claim against Defendant would be futile. Accordingly, Plaintiff's complaint is dismissed without leave to replead." This is speculative, and a court cannot possibly speculate on how an appeals court will rule on a case after additional proceedings.

P.8   *Oxman v. Oxman,* is also irrelevant to my case as it relates to an injury that allegedly occurred because of a divorce. This is a post-divorce incident, and my case involves federally protected monies that I advised could not be divided.

## CONCLUSION

For the reasons set forth above, the Judgment of the Onondaga County Supreme Court and

dismissal by the District Court should be reversed. Egregious and judgmental errors have

obviously led to the United States District Court Northern District of New York to base its

decision of dismissal on the belief that the monies in question were from military retirement and

not those that cannot be divided in divorce. The District Court never included any reason or

proof that the disputed monies could legally be divided in a divorce. The Memorandum-Decision

and Order has proved that military retirement can be divided in divorce, but not the types of

monies that I have presented in dispute.

Respectfully submitted,

Paul Mitura, Pro Se
Plaintiff-Appelant

## CERTIFICATE OF COMPLIANCE

I, Paul Mitura certify that this brief contains 14,000 words or less.

As the appendix I have included the District Court Docket sheet and the order from which the last judgement was made, the United States District Court Northern District of New York Memorandum-Decision and Order, filed August 24, 2023. I was advised by the Court that I had the opportunity to provide relevant portions of the pleadings, findings, opinions, or other parts of the record to which I would like to direct the Court's attention. This is a protracted case that involved several judgements and orders. If I were to include the case in its entirety, it would include thousands of pages which I did not include for practicality. I can provide any additional information on request. Thank you.

2024 MAR 28 PM 2:20
RECEIVED

Paul Mitura
Pro Se Appellant

# U.S. District Court
# Northern District of New York - Main Office (Syracuse) [NextGen CM/ECF Release 1.7 (Revision 1.7.1.2)] (Syracuse)
# CIVIL DOCKET FOR CASE #: 5:22-cv-01272-MAD-ML
# Internal Use Only

Mitura v. The State of New York
Assigned to: U.S. District Judge Mae A. D'Agostino
Referred to: Magistrate Judge Miroslav Lovric
Cause: 10:1408 Armed Forces: Claim for Military Retirement

Date Filed: 11/30/2022
Date Terminated: 08/24/2023
Jury Demand: None
Nature of Suit: 370 Other Fraud
Jurisdiction: Federal Question

## Plaintiff

**Paul Mitura**

represented by **Paul Mitura**
5139 Old Barn Road
Clay, NY 13041
(315) 542-0648
Email:
PRO SE

V.

## Defendant

**The State of New York**

represented by **William A. Scott**
New York State Attorney General - Albany
The Capitol
Albany, NY 12224
518-776-2255
Email: william.scott@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*
*Fee Status: waived_2023*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 11/30/2022 | 1 | COMPLAINT against The State of New York filed by Paul Mitura. (Attachments: # 1 Notice of Plaintiff's Address, # 2 Civil Cover Sheet)(hmr) (Entered: 12/01/2022) |
| 11/30/2022 | 2 | MOTION for Leave to Proceed in forma pauperis filed by Paul Mitura. (Attachments: # 1 Proposed Summons) Motions referred to Miroslav Lovric. (hmr) (Entered: 12/01/2022) |

| 11/30/2022 | 3 | PRO SE HANDBOOK and NOTICE issued and explained to Paul Mitura at time complaint was filed. [Copies of this Notice, Pro Se Handbook and Local Rules were given to the plaintiff at the counter on 11/30/2022.] (hmr) (Entered: 12/01/2022) |
|---|---|---|
| 12/01/2022 | 🔒 | (Court only) ***Set Pro Se Flag and Cleared Mandatory-Mediation Flag. (hmr) (Entered: 12/01/2022) |
| 12/01/2022 | 🔒 | (Court only) ***Staff notes: Notified ML's Chambers that there is an IFP application filed in this case. (hmr) (Entered: 12/01/2022) |
| 02/07/2023 | 4 | DECISION and ORDER: that Plaintiff's IFP application (Dkt. No. 2 ) is Denied; that should Plaintiff wish to proceed with this action, he must pay the $402.00 filing fee within thirty (30) days from the date of the filing of this Decision and Order. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed; and that the Clerk shall serve this Decision and Order on Plaintiff by mail, along with copies of the unpublished decisions cited in accordance with the Second Circuit's decision in Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam). Signed by Magistrate Judge Miroslav Lovric on 02/07/2023. (Attachments: # 1 Unpublished Case) (Copy of the Decision and Order, along with the unpublished case were served via regular mail on pro se plaintiff on 2/7/2023.)(hmr) (Entered: 02/07/2023) |
| 02/13/2023 | | Filing fee: $ 402.00, receipt number 500000034. (pjh, ) (Entered: 02/13/2023) |
| 02/14/2023 | 5 | Summons Issued as to The State of New York. [Copied mailed out to pro se plaintiff via regular mail, along with the Dkt. No. 1 Complaint on 2/14/2023.] (hmr) (Entered: 02/14/2023) |
| 02/14/2023 | 6 | G.O. 25 FILING ORDER ISSUED: Initial Conference set for 5/31/2023 at 11:00 AM by Telephone Conference before Magistrate Judge Miroslav Lovric. Civil Case Management Plan must be filed and Mandatory Disclosures are to be exchanged by the parties on or before 5/24/2023. (Pursuant to Local Rule 26.2, mandatory disclosures are to be exchanged among the parties but are NOT to be filed with the Court.) [Copy was mailed to pro se plaintiff via regular mail on 2/14/2024.](hmr) (Entered: 02/14/2023) |
| 02/14/2023 | 7 | AMENDED G.O. 25 FILING ORDER ISSUED: Initial Conference set for 5/31/2023 at 11:00 AM at 15 Henry Street, 1st Floor Courtroom, Binghamton NY before Magistrate Judge Miroslav Lovric. Civil Case Management Plan must be filed and Mandatory Disclosures are to be exchanged by the parties on or before 5/24/2023. (Pursuant to Local Rule 26.2, mandatory disclosures are to be exchanged among the parties but are NOT to be filed with the Court.) (Copy served on Pro Se Plaintiff via regular Mail)(jdp ) (Entered: 02/14/2023) |
| 02/14/2023 | 8 | TEXT-ONLY NOTICE REGARDING JUDGE D'AGOSTINO CASE DISPOSITION PILOT - Please refer to the Individual Rules and Practices of the Hon. Mae A. D'Agostino, U.S. District Judge, for guidance regarding the Case Disposition Pilot. https://www.nynd.uscourts.gov/sites/nynd/files/MAD_Rules_of_Practice_04_14_2020.pdf. (Copy served on Pro Se Plaintiff via regular Mail) (jdp ) (Entered: 02/14/2023) |
| 03/16/2023 | 9 | CERTIFICATES OF SERVICE by Paul Mitura. (hmr) (Entered: 03/16/2023) |

| 03/23/2023 | 10 | Pre-Motion Letter by The State of New York requesting a pre-motion conference submitted to Judge D'Agostino. MAD Pre-Motion Response Deadline 3/27/2023 (Scott, William) (Entered: 03/23/2023) |
|---|---|---|
| 03/30/2023 | 11 | RESPONSE to 10 Pre-Motion Letter requesting a pre-motion conference filed by Paul Mitura. (see) (Entered: 03/30/2023) |
| 04/04/2023 | 12 | TEXT ORDER granting 10 Pre-Motion Letter Request: It is hereby ORDERED that the defendants request for leave to file a motion to dismiss is GRANTED; The Court does not find a need for a pre-motion conference at this time. The Motion to Dismiss is to be filed on or before 5/1/2023. Upon the filing of the motion, all response and reply deadlines will be set. The motion will be decided on the submission of the papers only. Signed by U.S. District Judge Mae A. D'Agostino on 04/04/2023. (Copy served via regular mail upon plaintiff, along with pro se notice) (ban) (Entered: 04/04/2023) |
| 05/01/2023 | 13 | MOTION to Dismiss for Failure to State a Claim filed by The State of New York. Motion returnable before Judge D'Agostino, MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by The State of New York. Motion returnable before Judge D'Agostino Response to Motion due by 5/22/2023. Reply to Response to Motion due by 5/30/2023 (Attachments: # 1 Memorandum of Law, # 2 Affirmation of William Scott, # 3 Exhibit(s) A: Judgement of Divorce, # 4 Exhibit(s) B: Decision on Motion, # 5 Declaration of Service) (Scott, William) (Attachment 4 replaced on 5/2/2023) (hmr, ). (Entered: 05/01/2023) |
| 05/02/2023 | | CLERK'S CORRECTION OF DOCKET ENTRY re 13 Motion to Dismiss for Failure to State a Claim,,, Motion to Dismiss/Lack of Subject Matter Jurisdiction: Clerk replaced attachment 4 with a corrected document - pages going the correct way - the original filing had the pages to this document upside down. (hmr) (Entered: 05/02/2023) |
| 05/18/2023 | 14 | RESPONSE in Opposition re 13 MOTION to Dismiss for Failure to State a Claim filed by The State of New York. Motion returnable before Judge D'Agostino MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by The State of New York. Motion returnable before Judge D'Agostino filed by Paul Mitura. (hmr) (Entered: 05/18/2023) |
| 05/30/2023 | 15 | TEXT ORDER: In light of the filing of Motion to Dismiss 13 , the Rule 16 Initial Conference scheduled for 5/31/2023 before Magistrate Judge Miroslav Lovric is STAYED without date. SO ORDERED by Magistrate Judge Miroslav Lovric on 5/30/2023. (Copy served via regular mail upon plaintiff)(jdp ) (Entered: 05/30/2023) |
| 05/30/2023 | 16 | REPLY to Response to Motion re 13 MOTION to Dismiss for Failure to State a Claim filed by The State of New York. Motion returnable before Judge D'Agostino MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by The State of New York. Motion returnable before Judge D'Agostino filed by The State of New York. (Attachments: # 1 Declaration of Service)(Scott, William) (Entered: 05/30/2023) |
| 08/04/2023 | 🔒 | (Court only) ***Deadlines terminated. (ban) (Entered: 08/04/2023) |
| 08/24/2023 | 17 | MEMORANDUM-DECISION AND ORDER granting 13 Motion to Dismiss for Failure to State a Claim/Lack of Subject Matter Jurisdiction: The Court hereby |

| | | |
|---|---|---|
| | | ORDERS that Defendant's motion to dismiss (Dkt. No. 13) is GRANTED; and the Court further ORDERS that Plaintiff's complaint (Dkt. No. 1) is DISMISSED with prejudice; and the Court further ORDERS that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court furtherORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules. Signed by U.S. District Judge Mae A. D'Agostino on 08/24/2023. [copy mailed to plaintiff via regular and certified mail] (ban) (Entered: 08/24/2023) |
| 08/24/2023 | 18 | JUDGMENT in favor of The State of New York against Paul Mitura. (Copy served via regular and certified mail upon defendant) (Attachments: # 1 Appeal Notice) (ban) (Entered: 08/24/2023) |
| 09/05/2023 | 19 | U.S. POSTAL RETURN RECEIPT received - Certified Mailing as to 17 Memorandum-Decision and Order and 18 Judgment served on Paul Mitura. (hmr) (Entered: 09/06/2023) |
| 09/21/2023 | 20 | NOTICE OF APPEAL as to 17 Memorandum-Decision and Order, 18 Judgment by Paul Mitura. Received via MFT on 9/21/2023. (hmr) (Entered: 09/21/2023) |
| 09/22/2023 | 21 | ELECTRONIC NOTICE AND CERTIFICATION sent to US Court of Appeals re 20 Notice of Appeal. [Copy mailed to pro se plaintiff via regular mail on 9/22/2023.] (hmr) (Entered: 09/22/2023) |
| 10/04/2023 | | PAYMENT OF APPEAL FEE: $ 505.00, receipt number 500000980. (ztc) (Entered: 10/04/2023) |
| 10/04/2023 | 22 | SUPPLEMENTAL ELECTRONIC NOTICE AND CERTIFICATION sent to US Court of Appeals re 20 Notice of Appeal. Appellant has paid the Appeal Fee. (ztc) (Entered: 10/04/2023) |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PAUL MITURA,

                                        Plaintiff,

     vs.                                                    5:22-CV-01272
                                                           (MAD/ML)
THE STATE OF NEW YORK,

                                        Defendant.

---

APPEARANCES:                          OF COUNSEL:

PAUL MITURA
5139 Old Barn Road
Clay, New York 13041
Plaintiff, *Pro Se*

NEW YORK STATE ATTORNEY               WILLIAM A. SCOTT, AAG
GENERAL – ALBANY
The Capitol
Albany, New York 12224
Attorneys for Defendant


Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

*Pro se* Plaintiff Paul Mitura ("Plaintiff") commenced this civil rights action against

Defendant on November 30, 2022, asserting claims related to his divorce, which was issued by

the Onondaga County Supreme Court in November 2020. *See* Dkt. No. 1.

Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint in its

entirety, *see* Dkt. No. 13-1, Plaintiff's response in opposition to Defendant's motion, *see* Dkt. No.

14, and Defendant's reply to Plaintiff's response, *see* Dkt. No. 16.

## II. BACKGROUND

On November 24, 2020, Judge Martha E. Mulroy of the Onondaga County Supreme Court issued a divorce decree to Plaintiff and his former spouse. *See* Dkt. No. 13-3. In the decree, Judge Mulroy awarded Plaintiff's former spouse "her marital share of Plaintiff's military pension pursuant to *Majauskas v. Majauskas*, 61 N.Y.2d 481 (1984)." *Id.* at 4.

In his complaint dated November 30, 2022, Plaintiff claims Judge Mulroy violated 10 U.S.C. § 1408,[1] the Uniformed Services Former Spouses Protection Act ("USFSPA"), by awarding a portion of Plaintiff's "Veteran's Administration Compensation, Social Security Disability Insurance, inheritance, and estate funds" to Plaintiff's former spouse. Dkt. No. 1 at 2; *see* Dkt. No. 1-2. Plaintiff argues that these assets are separate property—not marital. *See* Dkt. No. 1 at ¶ 1. Additionally, Plaintiff claims he "made several attempts to appeal this case with the New York State Court of Appeals, Fourth Judicial Department, and the New York State Court of Appeals, neither of which would allow [him] to appeal." Dkt. No. 1 at 2-3.

Defendant argues that Plaintiff's complaint must be dismissed because (1) the complaint fails to state a cause of action; (2) the claim is barred by the Eleventh Amendment; and (3) his claims against Judge Mulroy are barred by the *Rooker-Feldman* doctrine and the doctrine of judicial immunity. *See* Dkt. No. 13-1 at 5. In response, Plaintiff contends that he has stated "the [c]ause of [a]ction multiple times, in that federally protected property was awarded as marital property in a divorce." *See* Dkt. No. 14 at 1. Specifically, Plaintiff argues that the USFSPA exempts Veterans Affairs ("VA") disability pay from division in a divorce. *See id.* Plaintiff also states that "similar laws" preclude the division of "Social Security Disability Insurance, Estate

---

[1] Section 1408 is titled "[p]ayment of retired or retainer [military] pay in compliance with court orders," although Plaintiff did not point to any specific provision within the statute. 10 U.S.C. § 1408; *see* Dkt. No. 1-2.

Funds, and Inheritance." *Id.* at 1-2.  Plaintiff clarifies that he is seeking approximately $56,000,

which he alleges is the sum unjustly awarded to his former spouse in the divorce.  *See id.* at 2.  In

addition, Plaintiff purports to respond to Defendant's assertion of judicial immunity by

referencing the Supremacy Clause, stating, "federal law will almost always prevail when it

interferes with or conflicts with state law." *Id.* at 3.  Specifically, Plaintiff asserts that Judge

Mulroy violated the USFSPA by dividing the abovementioned assets in accordance with New

York State law.  *See id.*

## III. DISCUSSION

### A.   Standard of Review

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6)

must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a

decision on the merits and, therefore, an exercise of jurisdiction." *Dutrow v. New York State*

*Gaming Commission*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*,

607 Fed. Appx. 56 (2d Cir. 2015).  A motion seeking dismissal under the Eleventh Amendment or

the *Rooker-Feldman* doctrine is properly considered under Rule 12(b)(1).  *See Long Island Pure*

*Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019); *Hylton v. J.P. Morgan Chase*

*Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018).

"[A] federal court generally may not rule on the merits of a case without first determining

that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction)."

*Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation

omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When subject matter jurisdiction is challenged,

a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03 Civ. 597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1992)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the

4

pleading, the court may consider documents that are "integral" to that pleading, even if they are

neither physically attached to nor incorporated by reference into the pleading. *See Mangiafico v.*

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d

147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately,

"when the allegations in a complaint, however true, could not raise a claim of entitlement to

relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line

from conceivable to plausible, the . . . complaint must be dismissed." *Id.* at 570.

**B.      Application**

Defendant argues that "[t]here is no explanation how any of the events surrounding

Plaintiff's divorce from his spouse rise to a federal issue." Dkt. No. 13-1 at 6. In response,

Plaintiff states his cause of action "in that federally protected property was awarded as marital

property in a divorce" and "the [USFSPA] exempts VA disability payments from division upon

divorce." Dkt. No. 14 at 1.

Pursuant to 28 U.S.C. § 1331, an action may be filed in federal court if the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The USFSPA does not expressly create a federal cause of action. *See generally* 10 U.S.C. § 1408; *see also Reyes v. Reyes*, No. 11-CV-2536, 2011 WL 3625562, *2 (E.D.N.Y. Aug. 16, 2011) (finding the plaintiff cannot invoke subject-matter jurisdiction of the federal court pursuant to the USFSPA because the statute does not create a federal cause of action). Rather, 10 U.S.C. § 1408(c)(1) gives states the authority to treat disposable military retired pay as either separate or marital property in accordance with the law of such state. *See* 10 U.S.C. § 1408(c)(1). Further, Plaintiff's claims do not require the resolution of a substantial question of federal law. *See Bracey v. Bd. of Educ.*, 368 F.3d 108, 113 (2d Cir. 2004). Thus, this Court does not have jurisdiction over Plaintiff's 10 U.S.C. § 1408 claim.

Defendant argues that Plaintiff's complaint fails to provide explanation as to what federal law was violated or specify the property at issue beyond stating that it was "separate, and not marital." *See* Dkt. No. 13-1 at 6; Dkt. No. 1 at 2. Additionally, Defendant argues that Plaintiff has not stated a recognized cause of action. *See* Dkt. No. 13-1 at 6. In response, Plaintiff argues that his explanation "has been extensive in [his] attempted appeals" and his initial complaint. Dkt. No. 14 at 1.

There is no federal cause of action for challenging the judgment of a state court divorce proceeding or state judgments more generally. *See Badwal v. Badwal*, 756 Fed. Appx. 101, 102 (2d Cir. 2019). To the extent that Plaintiff's claim purports to challenge the Onondaga County Supreme Court's decision in his divorce proceeding, such a claim fails to state a short and plain statement showing that he is entitled to relief as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure.

6

Similarly, to the extent Plaintiff is attempting to assert Section 1983 claims, the Eleventh

Amendment bars such claims as the State of New York has not consented to suit in federal court

and Congress has not abrogated the state's immunity from Section 1983 claims.[2]  The Eleventh

Amendment provides that "[t]he Judicial power of the United States shall not be construed to

extend to any suit in law or equity, commenced or prosecuted against one of the United States by

Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend.

XI. "The Supreme Court has long held that the Eleventh Amendment bars suits against a state by

one of its own citizens, unless (1) the state consents to be sued, or (2) Congress validly abrogates

the state's immunity." *Ross v. City Univ. of New York*, 211 F. Supp. 3d 518, 525 (E.D.N.Y. 2016)

(citing *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense*

*Bd.*, 527 U.S. 666, 670 (1999)). The Eleventh Amendment bars Section 1983 claims against the

State of New York. *See Brokamp v. James*, 573 F. Supp. 3d 696, 707 (N.D.N.Y. 2021) (citing

*Jones v. N.Y. Div. of Military & Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999)), *aff'd*, 66 F.4th 374

(2d Cir. 2023). Accordingly, as the only named Defendant in this case is the State of New York,[3]

and the State has not waived its sovereign immunity, the Court agrees that Plaintiff's claims must

be dismissed. *See generally* Dkt. Nos. 1, 13.

Finally, to the extent that Plaintiff is challenging the state court's final order or judgment

in the divorce proceeding determining the property at issue is marital property, the claim is

prohibited by the *Rooker-Feldman* doctrine. *See Osuagwu v. Home Point Financial Corp.*, No.

---

[2] In his response to Defendant's pre-motion letter, Plaintiff addresses Defendant's Eleventh Amendment assertion, contending that the Supremacy Clause supports his claim. *See* Dkt. No. 11 at 1, 2. This convoluted claim that the Supremacy Clause supports an action against the State of New York is misguided. The Eleventh Amendment makes clear that with very limited exceptions, a state may not be sued in federal court. *See* U.S. Const. amend. XI.

7:22-cv-3830, 2022 WL 1645305, *7 (S.D.N.Y. May 24, 2022) (citing cases finding that the plaintiff's challenge to a divorce decree awarding marital property is precluded by the *Rooker-Feldman* doctrine). The fact that Plaintiff contends that his rights under federal law have been violated by the state court's order do not change this result. *See Oxman v. Oxman*, No. 3:16-CV-1304, 2017 WL 4078114, *3-4 (D. Conn. Sept. 13, 2017) (holding that the *Rooker-Feldman* doctrine prohibited claims "couched in terms of fraud and violations of constitutional rights, [because it was] apparent that the injuries the plaintiff claims she has sustained all relate back to the Judgment of the New York Supreme Court entered in the plaintiff's divorce case . . . and the consequences flowing from that Judgment, *e.g.*, the transfer of . . . property").

C.   **Leave to Amend**

The Second Circuit has clearly stated that "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted). However, leave may be denied "where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile." *Harrison v. New York*, 95 F. Supp. 3d 293, 305 (E.D.N.Y. 2015). An amendment of a pleading is considered "futile" when the proposed new claim would not withstand a motion to dismiss. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Here, Plaintiff's complaint is subject to dismiss on jurisdictional grounds, which will not be cured through better pleading. For this reason, any attempt to amend the claim against

---

[3] Even assuming Plaintiff is attempting to assert claims against Judge Mulroy, these claims are barred by the doctrine of judicial immunity. *See Cinotti v. Adelman*, 709 Fed. Appx. 39, 41 (2d Cir. 2017).

Defendant would be futile.  Accordingly, Plaintiff's complaint is dismissed without leave to replead.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**


Dated: August 24, 2023
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

9

Paul D Mitura
5139 Old Barn Rd.
Clay, NY 13041-8974



**Retail**





10007

**RDC 99**

U.S. POSTAGE PAID
FCM LG ENV
CLAY, NY 13041
MAR 25, 2024

**$2.83**

R2304N116975-21

U.S. Court of Appeals
40 Foley Sq Ste 1,
New York, NY 10007

USMAIL
SDNY


Paul D Mitura
5139 Old Barn Rd.
Clay, NY 13041-8974



**Retail**





10007

**RDC 99**

U.S. POSTAGE PAID
FCM LG ENV
CLAY, NY 13041
MAR 26, 2024

**$2.11**

R2305K139879-11

U.S. Court of Appeals
40 Foley Sq. Ste 1
New York, NY 10007

USM4LL
SDNY